UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JANICE D. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:18-CV-395-DCP |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 20]. Janice D. Williams ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT** Plaintiff's motion and **DENY** the Commissioner's motion.

**I. PROCEDURAL HISTORY**

On June 8, 2015, Plaintiff filed an application for disability insurance benefits, as well as disabled widow's insurance benefits, pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability beginning on June 11, 2013. [Tr. 11, 207–12]. After her

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 132]. A hearing was held on May 31, 2017. [Tr. 28–55]. On February 14, 2018, the ALJ found that Plaintiff was not disabled. [Tr. 11–22]. The Appeals Council denied Plaintiff's request for review on July 23, 2018 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on September 19, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

In her February 14, 2018 disability decision, the ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.
>
> 2. It was previously found that the claimant is the unmarried widow of the deceased insurance worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.
>
> 3. The prescribed period ends on February 28, 2021.
>
> 4. The claimant has not engaged in substantial gainful activity since June 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 5. The claimant has the following severe impairments: back disorder, hypertension, and obesity (20 CFR 404.1520(c)).
>
> 6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

7. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except she can occasionally climb ramps or stairs, can never climb ladders, ropes, or scaffolds, can occasionally balance, stoop, kneel, crouch, or crawl and should avoid concentrated exposure to pulmonary irritants.

8. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

9. The claimant was born on July 2, 1962, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563). The claimant changed age categories to an individual of advanced age.

10. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

12. Considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 CFR 404.1569 and 404.1569(a)).

13. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2013, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 14–22].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

4

> in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence; claiming that the ALJ improperly rejected the only medical opinions of record, and instead relied upon her own lay opinion in crafting an RFC that did not account for the physical limitations stemming from Plaintiff's impairments.[2] The Commissioner maintains that the ALJ properly considered and assigned little weight to the opinions of the nonexamining state agency physicians, and that the ALJ's RFC determination is supported by substantial evidence.

On October 7, 2015, nonexamining state agency medical consultant Donald Baldwin, M.D., reviewed the evidence of record at the initial level of the agency's review and opined that Plaintiff could occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds. [Tr. 62–63]. Additionally, Dr. Baldwin found that Plaintiff could stand and/or walk, as well as sit, for about six hours in an eight-hour workday with normal breaks. [Tr. 63]. When assessing Plaintiff's postural limitations, Dr. Baldwin opined that Plaintiff could frequently balance; occasionally climb ramps or stairs, stoop, and crouch; and never climb ladders, ropes, or scaffolds, kneel, or crawl. [*Id.*]. Dr. Baldwin noted that these postural limitations were supported by Plaintiff's morbid obesity, as well as osteoarthritis and degenerative disc disease. [*Id.*]. On March 15, 2016, Karen Sarpolis, M.D., examined the evidence of record at the reconsideration level of the agency's review, and opined similar limitations, including finding that Plaintiff could perform an RFC of light work. [Tr. 86–89].

---

[2] The Court notes that the ALJ afforded great weight to the opinions of the state agency psychological consultants while finding that Plaintiff has no severe mental impairments. [Tr. 16].

In the disability decision, the ALJ reviewed Dr. Baldwin and Dr. Sarpolis' opinions and noted that they opined that Plaintiff could perform a range of light exertion, but ultimately assigned little weight to the opinions. [Tr. 19]. The ALJ detailed that although x-ray imaging from August 27, 2015 of Plaintiff's lumbar spine indicated grade I spondylolisthesis at L4-5 with facet arthritis, a review of the medical record demonstrated no consistent complaints of back pain, and Plaintiff's treatment notes indicated that she enjoyed walking. [*Id.*]; *see* [Tr. 541, 671]. Further, the ALJ found that there were no emergency room visits for back pain, and that medical records demonstrated that Plaintiff's hypertension was described as stable. [Tr. 19]. Therefore, the ALJ found that Plaintiff had the RFC to perform medium work, that she could occasionally climb ramps or stairs, could never climb ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, crouch, or crawl, and should avoid concentrated exposure to pulmonary irritants. [*Id.*].

Plaintiff challenges the ALJ's assignment of little weight to the opinions of the nonexamining state agency physicians, claiming that the ALJ failed to provide legally sufficient reasons for discounting the opinions. [Doc. 18 at 7]. Further, Plaintiff asserts that the ALJ improperly rejected the only medical opinions of record regarding her physical impairments, and that an RFC of light work would warrant a finding that Plaintiff was disabled under the applicable Grid Rules. [*Id.* at 6–10].

A claimant's RFC is the most that claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*,

531 F. App'x 719, 727–28 (6th Cir. 2013). "[W]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his or her own lay medical opinion for that of a treating or examining doctor." *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (internal quotation marks and brackets omitted).

In *Baker v. Berryhill*, another court within this District recently summarized the relevant case law regarding "when there is one medical opinion that is at least partially rejected by the ALJ," stating that:

> Does the ALJ impermissibly "play doctor" when he formulates an RFC that is not supported by the expert medical opinion? Some district courts have held that "the ALJ 'must generally obtain a medical expert opinion' when formulating the RFC unless the 'medical evidence shows relatively little physical impairment' such that the ALJ can permissibly render a commonsense judgment about functional capacity[.]" *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017). Some have required an RFC determination to be supported by a medical opinion. *See, e.g.*, *Wyatt v. Comm'r of Soc. Sec.*, No. 12-11406, 2013 WL 4483074, at *16 (E.D. Mich. Aug. 19, 2013) ("ALJ RFC determinations must be supported by medical opinions."). Those cases seem to reflect the consensus that ALJs are not qualified to translate or interpret raw medical data, such as MRIs, or other diagnostic tests, in reaching a RFC assessment.

No. 2:17-CV-175-MCLC, 2019 WL 1560538, at *3 (E.D. Tenn. Feb. 13, 2019).

"Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted by*, 2017 WL 3172717 (S.D. Ohio July 25, 2017). An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Ultimately, with respect to the ALJ's failure to base her RFC

on a medical opinion, the Sixth Circuit has recently found that "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

The ALJ first found that Plaintiff had not generally received the type of medical treatment expected for a disabled individual. [Tr. 18]. While reviewing the medical record, the ALJ detailed that upon examination with Henry L. Gupton, M.D., Plaintiff's primary care practitioner, Dr. Gupton noted a negative straight leg raise and bilateral paraspinal tenderness on September 10, 2014. [Tr. 19]; *see* [Tr. 389]. However, the ALJ noted that there was no mention of back pain during Plaintiff's next visit with Dr. Gupton in January of 2015. [Tr. 19]. Additionally, Plaintiff's hypertension was stable during her June 17, 2015 visit with Dr. Gupton [Tr. 582], and the ALJ stated that Plaintiff's anxiety "became the main complaint to the primary care provider." [Tr. 18]. The ALJ also noted that a May 30, 2017 treatment note stated that Plaintiff "enjoys walking." [*Id.*]; *see* [Tr. 671].

Plaintiff was consultatively examined by Robert Blaine, M.D., on August 25, 2015, although Dr. Blaine did not provide an opinion. [Tr. 540]. Dr. Blaine diagnosed back pain, and detailed that Plaintiff was 59 inches without shoes and weighed 301 pounds. [*Id.*]. On examination, Plaintiff's range of motion of the thoracolumbar spine revealed: flexion to 90 degrees, extension to 20 degrees, and lateral flexion to 15 degrees either side. [*Id.*]. Plaintiff's gait and station were normal for her size, and Dr. Blaine noted that Plaintiff appeared "to be slightly dyspneic secondary to her obesity, but no other particular limits from her obesity were noted." [*Id.*]. The ALJ reviewed Dr. Blaine's examination findings, as well as detailing that x-ray imaging

9

of Plaintiff's lumbar spine indicated grade I spondylolisthesis at L4-5 with facet arthritis. [Tr. 18]; *see* [Tr. 541].

Next, the ALJ reviewed Plaintiff's height and weight, and recognized "that obesity is a risk factor that increases an individual's chances of developing impairments in most body systems," and that she considered "the adverse impact of [Plaintiff's] obesity on her limitations" in conjunction with the impact of her impairments. [Tr. 19]. However, the ALJ then cited to Plaintiff's treatment records with Dr. Gupton to note that her hypertension was described as stable with medications. [*Id.*]. Additionally, the ALJ found that "[t]he description of the symptoms and limitations that the claimant has provided throughout the record has generally been inconsistent and unpersuasive." [*Id.*]. The ALJ cited to the previously discussed May 2017 treatment note stating that Plaintiff enjoyed walking as a hobby, as well as Dr. Gupton's September 10, 2014 examination findings and a treatment note indicating that Plaintiff strained her back while moving heavy objects at her home. [*Id.*].

Lastly, as the Court has already discussed, the ALJ then assigned little weight to the opinions of the nonexamining state agency physicians. [*Id.*]. Ultimately, the ALJ was not required to adopt the opinions of the nonexamining state agency consultants, and found that the medical record did not support an RFC finding of light work. [*Id.*]. The ALJ found that Plaintiff's level of treatment was not indicative of the type expected for a disabled individual, as well as that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent. [Tr. 17–19]. The ALJ noted Plaintiff's August 27, 2015 x-ray results [Tr. 541], but found that there were no consistent complaints of back pain, Plaintiff indicated that she enjoyed walking, and Plaintiff's hypertension was described as stable. [Tr. 19]. Further, the ALJ was not required to prove "good reasons" for rejecting the opinions of non-treating medical sources. *Norris*

*v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (noting "a claimant is entitled under the SSA only to reasons explaining the weight assigned to his treating sources"); *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (holding that "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight'").

However, the Court "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829–30 (E.D. Mich. Mar. 28, 2017) (quoting *Pollaccia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011)); *see, e.g.*, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (requiring an appellate record that would "permit meaningful review" of the ALJ's application of the regulations). Therefore, while the ALJ was not required to base her RFC determination on any medical opinion, and arguably provided a substantial basis for rejecting certain portions of the opinions of the nonexamining state agency consultants, the Court is unable to "trace the path of [her] reasoning" regarding the opined lifting and carrying restrictions in the RFC finding. *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

Under 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Medium work, rather, "involves lifting no more than 50 pounds at a time with frequent lifting and carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "The primary difference between light and medium work is that light work requires less lifting/carrying." *Mathers v. Berryhill*, No. 3:18-cv-418-LLK, 2019 WL 1427555, at *1 (W.D. Ky. Mar. 29, 2019) (citing Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)).

Both Dr. Baldwin and Dr. Sarpolis reviewed the evidence of record and opined that Plaintiff was limited to an RFC of light work. When providing additional explanation for his RFC, Dr. Baldwin reviewed that Plaintiff alleged a back injury, arthritis in her lower back, and shifting kneecaps. [Tr. 63]. Additionally, Dr. Baldwin detailed that Dr. Gupton noted bilateral knee pain, moderate severity, and a compensated gait on June 17, 2015, as well as acute back pain with injury, and an examination with decreased range of motion and paraspinal tenderness on September 10, 2014. [*Id.*]. Dr. Baldwin reviewed Plaintiff's BMI of 60.8 on August 25, 2015, in addition to the previously-discussed August 27, 2015 imaging showing grade I spondylolisthesis L4-5, as well as degenerative disc disease L5-S1 and "some" arthritic change in facet joints. [Tr. 64]. Dr. Baldwin also assessed Plaintiff's activities of daily living, and stated that Plaintiff was "primarily limited by morbid obesity which appears to affect endurance," and she had a history of intermittent low back pain with minimal changes on examination. [*Id.*]. Lastly, Dr. Baldwin stated that Plaintiff's knee pain was transient, and her "shifting" knee caps were not addressed, but "[a]dditional development in the form of imaging considering objective evidence in the [medical record was] not expected to materially affect" the medical/vocational decision. [*Id.*]. Dr. Sarpolis provided an identical explanation when affirming the original determination, while also noting that Plaintiff alleged worsening of her conditions, but was non-specific as to the date and details. [Tr. 88].

In light of the ALJ's rejection of all medical opinions regarding Plaintiff's physical impairments, the ALJ failed to adequately explain how her discussion of the medical record supported the opined lifting and carrying restrictions in the RFC. *See, e.g.*, *Johnson v. Saul*, No. 1:18-0041, 2019 WL 3647058, at *6 (M.D. Tenn. July 19, 2019) (finding "that the ALJ in the instant matter failed to establish the connection between the mental portion of the RFC and the evidence on which she based this formulation"), *report and recommendation adopted by*, 2019

WL 3574250 (M.D. Tenn. Aug. 6, 2019). Both Dr. Baldwin and Dr. Sarpolis opined that Plaintiff could occasionally lift and/or carry up to 20 pounds, but that she could frequently lift and/or carry up to 10 pounds. When reviewing Dr. Baldwin and Dr. Sarpolis' opinions, the ALJ failed to distinguish how her stated reasons for affording the opinions little weight supported a finding that Plaintiff could perform the lifting and carrying requirements of medium work. Similarly, the ALJ's broad review of the medical record did not provide support for or address the finding that Plaintiff had the capacity to perform the lifting and carrying requirements equivalent with a finding of medium work. *See, e.g., Evans v. Comm'r of Soc. Sec.*, No. 1:10–cv–779, 2011 WL 6960619, at *14, 16 (S.D. Ohio Dec. 5, 2011) (remanding where the Court was "unable to discern from the ALJ's opinion how he arrived at the RFC decision and what evidence he relied on in making that decision," explaining that "[s]imply listing some of the medical and other evidence contained in the record and setting forth an RFC conclusion without linking such evidence to the functional limitations ultimately imposed in the RFC is insufficient to meet the 'narrative discussion' requirement of SSR 96–8"), *report and recommendation adopted by*, 2012 WL 27476 (S.D. Ohio Jan. 5, 2012).

Additionally, the ALJ failed to distinguish the specific facts which the nonexamining state agency physicians stated supported their assessed limitations, such as Plaintiff's morbid obesity and osteoarthritis and degenerative disc disease of the lumbar spine. *Cf. Watson v. Comm'r of Soc. Sec.*, No. 1:16-CV-432-SKL, 2018 WL 1460866, at *12–13 (E.D. Tenn. Mar. 23, 2018) ("The ALJ has provided a reasoned explanation why Plaintiff's RFC is less restrictive than found by every medical source of record. The ALJ is allowed to depart from the medical opinions in assessing Plaintiff's RFC so long as he does not draw conclusions without citing to substantial evidence in support."). Plaintiff correctly states that the state agency consultants based their

13

opinions on her "morbid obesity, intermittent lower back pain, and transient knee pain." [Doc. 18 at 12]. *Cf. Olshelfske v. Comm'r of Soc. Sec.*, No. 18-12095, 2019 WL 4892422, at *8 (E.D. Mich. Aug. 16, 2019) (finding the ALJ created a logical bridge between the medical evidence and the ALJ's RFC determination, and distinguishing *McCraig v. Comm'r of Soc. Sec.*, No. 16-11419, 2017 WL 4211047, at *7 (E.D. Mich. 2017), as the plaintiff failed to "point[ ] to specific medical evidence that is inconsistent" with the RFC findings"). Here, the ALJ failed to review in detail the effects of Plaintiff's morbid obesity, stating only that she considered it in connection with Plaintiff's other impairments. The ALJ acknowledged the results of the August 2015 x-ray showing grade I spondylolisthesis at L4-5 with facet arthritis, but based her assignment of little weight to the opinions largely on Plaintiff's lack of consistent complaints of back pain. As Dr. Blaine did not offer an opinion of functional limitations, the ALJ failed to incorporate his examination findings in her discussion of the opinions of the nonexamining state agency consultants.

Further, it is unclear how Plaintiff's reported daily activity of enjoying walking corresponds to the ALJ's finding that she could frequently lift up to 25 pounds, and lift up to 50 pounds. Plaintiff cites to her July 20, 2015 function report, wherein she stated that she was unable to continue walking for exercise because of her back pain. [Doc. 18 at 12]; *see* [Tr. 253]. An isolated portion of a treatment note in the medical record stating that Plaintiff enjoyed walking does not constitute substantial evidence in support of the ALJ's RFC finding. Overall, this lack of clarity and discussion is particularly relevant due to the key differentiating factor between light and medium work—the lifting and carrying requirements. *See Mathers v. Berryhill*, No. 3:18-cv-418-LLK, 2019 WL 1427555, at *1 (W.D. Ky. Mar. 29, 2019) (citing Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)).

Accordingly, the Court finds that the ALJ failed to establish the connection between the lifting and carrying restrictions in the RFC and the evidence on which she based this formulation. *See Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). Ultimately, a reasoned explanation of the medical record and Plaintiff's physical impairments may support a similar finding, but the Court finds that the ALJ failed to provide an accurate and logical bridge between the medical record and Plaintiff's RFC. *See, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, No. 1:12-CV-66, 2013 WL 1249225, at *17 (E.D. Tenn. Feb. 28, 2013) (holding that "[i]t may be that the ALJ's ultimate conclusion was correct; however, upon close review of the ALJ's decision and the inadequacy of explanations given for some of his determinations, [the Court] cannot conclude the ALJ's decision was supported by substantial evidence"), *report and recommendation adopted by*, 2013 WL 1247681 (E.D. Tenn. Mar. 26, 2013).

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to appropriately reevaluate and address Plaintiff's RFC, while detailing substantial evidence in support of the RFC determination, consistent with this Memorandum Opinion.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge